EDKy 520 (Rev. 02/14) Complaint under §1983 or Bivens Action

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
_____ DIVISION at _____

Eastern District of Kentucky
**F I L E D**

JUL 0 6 2020

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. _____    (Court Clerk will supply)

LaQuan Johnson #87782-379
PLAINTIFF

6:20-cv-143-KKC

VS:

Carrie Cunnagin, Ms. Jones,
Ms. Free, Gregory Kizziah,
Dr. Nadum, and Jennifer      (do not use "et al.",
Reed, John Doe and Jane         enter full names)
Doe

Demand for Jury Trial:
Yes (✓) No (___)

DEFENDANTS

**I.    Plaintiff:**

A. Name (list any aliases): LaQuan Johnson

B. Prisoner ID #: 87782-379   Check one: Convicted ✓   Pretrial Detainee ___

C. Place of present confinement: USP McCreary

D. Address: P.O. Box 3000, Pine Knot, KY 42635

**II.    Defendant(s):** (additional defendants may be listed on a separate sheet of paper)

A. Defendant's Name:     Carrie Cunnagin

    Title or Position:     Doctor

    Place of Employment: USP McCreary

B. Defendant's Name:     Ms. Jones

    Title or Position:     Overseer of the entire medical department

    Place of Employment: USP McCreary

Page 1 of 8

EDKy 520 (Rev. 02/14) Complaint under §1983 or Bivens Action

C. Defendant's Name: Ms. Free          F. Jennifer Reed
   Title or Position: Nurse                Case Manager
   Place of Employment: USP McCreary        USP McCreary
D. Defendant's Name: Gregory A. Kizziah
   Title or Position: Warden (former)
   Place of Employment: USP McCreary (former)
E. Defendant's Name: Dr. Nadum
   Title or Position: Doctor
   Place of Employment: Lake Cumberland Orthopedic

## III.   Statement of Claim:

Below you should state the **FACTS** of your case.  You don't need to make legal arguments or refer to any cases or statutes.

If you wish to allege a number of related claims, write out each claim in a separate numbered paragraph.  (If you need more space, you may attach extra sheets).

A. What happened?  Explain specifically what each Defendant did or failed to do.

**Claim 1**

I was injured in 2016 at Atlanta USP and eventually was diagnosed with mononeuropathy of the upper right limb which I was given multiple medications to treat, also a bottom bunk pass. My medication trial started Dec. 18, 2017. I was given DUloxetine Delayed Release Capsules, Naproxen, and then Amitriptyline. I was reevaluated every 6 months and my dosage of Amitriptyline was increased over the years at Atlanta USP to help treat my condition. April 2019 I was reevaluated again by Dr. Martin at Atlanta USP who determined my dosage of Amitriptyline be changed again and gave me another prescription that was good for the next 6 months. I was given Amitriptyline and Naproxen. Two weeks later I was transfered to USP McCreary, where I was seen by Dr. Cunnagin about a week after arriving. I was still receiving my medication when I arrived

Page 2 of 8

EDKy 520 (Rev. 02/14) Complaint under §1983 or Bivens Action

at USP McCreary up until my initial visit with Dr. Cunnagin. During this Visit with Dr. Cunnagin (which only lasted about 5 minutes) she asked me why was I taking Amitriptyline and Naproxen? I explained to her how its for my mononeuropathy in my right arm and hand. She then asked why I had a bottom bunk pass? I explained how I had a history of falling off top bunk due to my nerve damage. Dr. Cunnagin then told me she was taking me off my nerve damage medication and bottom bunk pass. I tried to explain to her how I've been taking medication for my mononeuropathy of the upper limb for almost 2 years and how I just had my prescription refilled for the next 6 months a couple of weeks ago. She then told me "Well, this isn't Atlanta USP and I'm the doctor here so I can do how I please at USP McCreary." I then tried again to reason with her about my condition, how its on my file, and how the program statement proves I can have my prescription until it runs out. She got furious and yelled at me, "I don't care about any of that and if you don't get out of my

**Claim 1**

(Continues with Attachment A1- A4)

B.  When did these events happen?

These events happen over the entire time I've been at USP McCreary. Dateing from my arrival April 25, ~~2020~~ 2019 to Feb. 2020.

Attachment A-1

office your going to the SHU." I left, but I started sending electronic cop-outs and grivences to Ms. Jones and Warden Kizziah about the issues I was having with the medical department. They either ignored them or tried to justify what they where doing. I continued to complain to them about how my safety depends on my medication and bottom bunk pass. I also made it know that I fell off top bunk not too long after being taken

**Claim 1** off my medication. and that I feel I'm going to hurt myself soon. I was ignored as always. Eventually, on June 1, 2019 I fell off top bunk again and broke my finger. The next morning (June 2, 2019) I went to sick-call and explained to Ms. Free that my finger was broken and she refused to help me. Nurse Free told me that a broken finger wasn't going to kill me and that she doesn't have time to help me. I tried to explain to her how a broken finger is an emergency according to the law. Nurse Free got upset and said," If you don't leave out of med-ical I'm going to hit the button on you." I left and went to sick-call the next day (June 3, 2019) where it was determined that my finger was indeed broken. I was given a bottom bunk pass due to my injury.

After It was determined that my finger was broken I was put in for an emergency fracture and later sent to an outside doctor, Dr. Nadum. My bottom bunk pass was only good for June 3, 2019 to July 31, 2019, but my finger was still fractured after it was expired. I then

**Claim 1** again tried to inform Warden Kizziah and Ms. Jones how me being denied at least an extension on my bottom bunk pass by Dr. Cunnagin until my finger fully heals is putting me back in danger of hurting myself again. I was ignored again, therefore I continued the grivence process. All throughout my entire grivence process all the response I

Attachment A-2

got kept making it seem as if I came to USP McCreary without any medication already prescribed to me and that I asked Dr. Cunnagin to give me a new prescription. Even the response on my Tort Claim says, "You alleged you were denied medication for nerve pain and lower bunk pass.". Nowhere on any of my response from the BP8 to the Tort Claim does the Government acknowledges the fact or even mention the fact that I had a new refill on my nerve medication April 2019 that was good until Oct. 2019 that Dr. Cunnagin didn't honor inspite of the need for it well documented since 2017.

**Claim 1**

On Oct. 29, 2019 I talked to Ms. Kenney (My provider) about how I'm feeling more sharp pains in my right hand and arm. I also explained how I need my nerve damage medication and bottom bunk pass. She told me that she would email Dr. Cunnagin that I need to speak with her about everything thats going on, but I still never heard from Dr. Cunnagin. On Nov. 19, 2019 I fell again off the top bunk and hurt my toe. I was examined on Nov. 21, 2019 by Ms. Mircle who determined that I needed an x-ray done. I continued to send request to medical that I need them to honor my medications that were prescribed by a doctor or to send me to a nerve damage specilist, but I'm consistently being denied or ignored. Dr. Cunnagin would never allow me to speak to her via emails, in person, or any other form of communication since our first and only conversation where she took me off my medication and threaten to send me to the SHU.

**Claim 1**

The most recent issue I've experience at USP McCreary was when I started experiencing pain in my jaw when I wake

**Claim 1**

Attachment A-3

up in the morning. That's when I started asking my cell mate if I be doing anything in my sleep. He told me that I grind my teeth really hard when I sleep. He told me it sounds as if I'm breaking my teeth ~~apart~~ apart. Thats when I asked all my old cell mates if I did that when I sleep and I was told the exact same. That's when I was ~~ask~~ advised that the

Claim 1   grinding can be linked to my history of nerve damage. I began sending in request to Dr. Cunnagin about the issue, but she never responded. That's when I started the grivence process over again, but as usual I don't expect anything to come of it. This is when I decided to move forward ~~w~~ with my law suit after I began the grivence process June 4, 2020 about my jaw hurting from the grinding while I sleep.

<u>End of Claim 1</u>


<u>Beginning of Claim 2</u>


On Sept. 13, 2019 I had more x-rays done that showed that my finger was still fractured. Therefore, I was sent back to Dr. Nadum to determine why the finger wasn't healed. On Sept. 23, 2019 I was evaluated by Dr. Nadum who told me my finger was

Claim 2   completely healed and I shouldn't have any problems. I asked him how is that possible if the x-ray he was looking at is the x-ray from Sept. 13, 2019 which still showed a fracture? Dr. Nadum got upset and told the officers he was done with me. Upon returning to USP McCreary Sept. 23, 2019 after seeing Dr. Nadum I was taken straight

Attachment A-4

to medical where I saw Dr. Cunnagin. I tried to speak to her about how Dr. Nadum lied to me about my finger being heal and how I still was in pain, but she ignored me and walked off. On Oct. 3, 2019 I turned in a paper copy request to medical due to my finger still being in pain, but I was told that Dr. Nadum

**Claim 2**

said that my finger is completely heal and to buy pain medication. I was taken to get more x-rays on Oct. 17, 2019 and on Oct. 24, 2019 my results where gone over with me by Mr. Dyer. Mr. Dyer informed me that my finger wasn't heal and that I will be scheduled to see another Orthopedic Specilist to find out what's going on with my healing process. Dr. Nadum lied to me about the condition my finger was in, inspite of him having access to the x-ray that still showed a fractured. He also mislead staff in medical at USP McCreary to believe my injury was completely healed.

End of Claim 2


Beginning of Claim 3

**Claim 3**

When I arrived at USP McCreary I was advised by Dr. Johnson in pshycology that I only had 25 points and if I get my GED verified or my detainers removed I will be able to transfer to a FCI. I immediately went to the Education Department and talked to Mr. Stevens who verified my GED after looking at my file. I arrived at USP McCreary April 25, 2019 and I had

Attachment A-5

my GED verified and detainers removed within the first 2 weeks of me arriving. This was all done before my initial team with Ms. Reed. My team with Ms. Reed was done in May 2019. I explain to Ms. Reed how I have FCI points and I'm only here at McCreary because there was an error on my PSR Ø that my GED wasn't verified. I explained to her how I already verified my GED so I can be transfered to a FCI. Ms. Reed looked at my file and said,"your right, you can be transfered. However, thats not how it works here at USP McCreary." Then she said,"On top of that I see you have an assult on staff write up, so your going to have to stay here at least 6 months be- fore you transfer." I then attempted to explain to her how those write ups are false and currently under investigation in Federal Court. Ms. Reed then said," I hope thats not a threat. I heard about the situation with you and medical. I also see that you like to write staff up a lot, but I'm advising you that if you start that here it will be very detrimental for you." I then told her that I'm just trying to get to a facility that offers more access to programs to help me survive, because I'm about to be release very soon. She then told me," Well, do the right thing and come back to see me in 6 months." ~~During the~~

**Claim 3**

During the next 6 months I've stayed out of trouble (Inspite of the fact that during that time the dorm 5A that I was assigned to was the most violent and had more incidents than any other dorm.) and completed multiple programs. I even got my detainers lifted off, dropping my points even

**Claim 3**

Attachment A-6

lower. When I went back to team in Nov. 2019 I tried to show Ms. Reed all the productive things I did to stay out of trouble and how I did what she said to do. Ms. Reed then said, "Yea, you did stay out of trouble. However, you didn't listen to my advise about writing staff up here. I also see you wrote to the Warden and the CMC Department about my decision to keep you here." I then told her how I'm just exercising my 1st Amendment. She then got upset and said, "Well, I see you don't like to listen. I'm not transfering you." I began to question her how can she deny me my transfer to a FCI when my points are FCI points, I was only sent here due to a error on my PSR that I fixed, I got my detainer removed, I stayed out trouble, and I completed multiple programs since our last visit. I was even taking multiple programs at one time. She then told me, "Maybe if you didn't continue to write up staff here I would feel different. Plus, on top of that you have an assult on staff write up and I've been attacked by an inmate before. So, that doesn't help. If you give me a year shot free and keep programing and stop writing up staff I'll put you in for a transfer." I immediately advised her how what she is doing is retaliation and she can be held accountable in Federal Court. Ms. Reed got furious and said, "If you file or write up anything about me you will be stuck here at USP McCreary until you go home." At that point I just got up and walked out her office.

My year shot free arrived in Feb. 2020. During this 3-4 month time period I continued to do multiple programs, I was working at the kitchen, and staying out of trouble. However, I

Claim 3

Claim 3

Attachment A-7

continued to exhaust my remedies with the issues I was having with the medical department. I didn't file anything against Ms. Reed in fear of her not putting me in for a transfer to a FCI. However inspite of me doing what she said Ms. Reed still refused to put me in for a transfer. We had this last discussion toward the end of Feb. 2020.

**Claim 3**

Ms. Reed told me," Johnson I'm not going to put you in for a transfer. You are doing good with staying out of trouble and programing, but I see that you still are trying to file a lawsuit against staff here at USP McCreary." I told Ms. Reed that by law she can't do what she is doing. Ms. Reed then said," This is USP McCreary. I don't care about any of that stuff you had or got going on with Atlanta USP, but it won't work here." I left out her office and shortly after I decided to include Jennifer Reed with my lawsuit against the other staff members at USP McCreary.

<u>End of Claim 3</u>

EDKy 520 (Rev. 02/14) Complaint under §1983 or Bivens Action

C.  Where did these events happen?

_All these events took place at USP McCreary._

D.  What rights under the Constitution, federal law, federal regulations, state law, or state regulations do you allege the Defendant(s) violated?  State the specific constitutional provision or law if you know it.

_I believe my 8th and 1st Amendment have been violated. There where other rights under the Program Statement # P6360.01, Subject: Pharmacy Services. There was other rights violated dealing with my security level and more laws, but I'm not familiar with them._

## IV.   Exhaustion of Administrative Remedies

A prisoner must complete all steps of the prison's grievance process before filing any lawsuit that relates to prison conditions.

A.  **Federal Prisoners** answer the following:

1.  Did you file a grievance regarding the facts in this Complaint under Bureau of Prisons regulations?   YES ( ✓ )   NO (____)

2.  If so, did you (check **ALL** that apply):
    - ✓  file a request or appeal to the Warden ___6/5/19___ date
    - ✓  appeal to the Regional Director ___7/9/19___ date
    - ✓  appeal to the Office of General Counsel ___9/25/19___ date

3.  **ATTACH** a copy of each grievance or appeal form you filed and the prison's response(s) to each grievance or appeal.

EDKy 520 (Rev. 02/14) Complaint under §1983 or Bivens Action

4.  What was the result? They where all denied stating that I don't have a history of mononeuropathy of the upper right limb, but I have a history of it since 2017.

5.  If you did not file a grievance, why not? I did file one. I also filed a Tort Claim.

B. **State Prisoners** answer the following:

1.  Did you file a grievance regarding these facts under Kentucky Department of Corrections CPP 14.6 or an appeal of a disciplinary decision to the warden under CPP 15.6?     YES (___)  NO (___)   N|A

2.  If you filed a grievance under CPP 14.6, did you (check **ALL** that apply):   N|A

    _____ file a grievance and seek an informal resolution         _____ date
    _____ request a hearing from the Grievance Committee          _____ date
    _____ appeal to the Warden                                    _____ date
    _____ appeal to the Commissioner                              _____ date

    Did you file an appeal of a disciplinary decision to the warden under CPP 15.6?
            YES (___)  NO (___)    N|A            _____ date

3.  **ATTACH** a copy of each grievance or appeal form you filed and the prison's response(s) to each grievance or appeal.

4.  What was the result?  N|A

5.  If you did not file a grievance, why not?
        N|A

Page 5 of 8

EDKy 520 (Rev. 02/14) Complaint under §1983 or Bivens Action

**C.**    **County or City Prisoners** answer the following:

N|A   1.    Is there a grievance/appeal policy at your jail?   YES (___)   NO (___)

2.    **ATTACH** a copy of the grievance/appeal policy to your Complaint, if available.  If not, briefly describe the grievance/appeal policy below.

_____

_____

3.    Did you file a grievance regarding these facts?   YES (___)   NO (___)

4.    If you filed a grievance:   N|A

a.    What steps did you take to use the grievance process?   N|A _____

_____

_____

_____

b.    What was the result?   N|A _____

_____

_____

c.    If unsuccessful, did you file an appeal?   YES (___)   NO (___)   N|A

d.    What was the result?   N|A _____

_____

e.    Did you take any further steps in the grievance process?
      YES (___)   NO (___)   NO MORE AVAILABLE (___)   N|A

f.    What was the result?   N|A _____

_____

5.    If you did not file a grievance, why not?:   N|A _____

_____

_____

_____

_____

EDKy 520 (Rev. 02/14) Complaint under §1983 or Bivens Action

## V.    OTHER LAWSUITS

A.    Have you filed any other lawsuit **dealing with the same facts** raised in this action?   YES (___)   NO (✓) ~~~~~~

B.    If your answer to question A is **YES**, describe the lawsuit in the space below. If you filed more than one other lawsuit, provide the same information for each other lawsuit on additional sheets of paper.

1. PARTIES:

Plaintiff:    N|A

Defendant(s):  _____

2. COURT: (name the district for a federal court, or the county for a state court)
    N|A

3. CASE NO.: N|A          DATE FILED:   N|A

4. OUTCOME: (is the case still pending?  was it dismissed?  being appealed?)
    N|A

5. DATE OF JUDGMENT, DISMISSAL, or APPEAL:   N|A

C.  List any other lawsuits that you have filed in any state or federal court:

1.  Plaintiff LaQuan Johnson 87792-379 vs. Defendant(s) Elaine Terry

    Court Name: U.S. District Court Northern District of Georgia        Case No.: 1:18-CV-1899-AT-JSA
    Atlanta Division
    Nature of Claim:  Failure to Protect & Indifferent Medical     Date Filed: 5/1/18

    Outcome:  Pending          Date: N|A

2.  Plaintiff _____ vs.  Defendant(s) _____

    Court Name: _____          Case No.: _____

    Nature of Claim:   N|A          Date Filed: _____

    Outcome: _____          Date: _____

EDKy 520 (Rev. 02/14) Complaint under §1983 or Bivens Action

3. Plaintiff _____ vs. Defendant(s) _____

| | |
|---|---|
| Court Name: _____ | Case No.: _____ |
| Nature of Claim: __N/A__ | Date Filed: _____ |
| Outcome: _____ | Date: _____ |

## VI.   Relief:

State exactly what you want the Court to do for you.  You don't need to make legal arguments or refer to any cases or statutes, just explain what you want to happen if you prevail on your claim.

I want $100,000 for my injuries and to have my medication returned to me. I would for the procedure at USP McCreary to change regarding inmates who arrive at the prison with medication. I also want $100,000 for the mental durass I have to suffer at USP McCreary

## VII.   Review this Form

Please take a moment to go back and review your responses to each of the questions. Immediately below you are required to certify under penalty of perjury that the information you have provided in this form is correct to the best of your knowledge, so please make sure that your responses fully and accurately explain your claim.

## CERTIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

_LaQuan Johnson_                    87782-379                    6/29/20
Signature of Plaintiff                    Prison ID#                    Date

Plaintiff's Address:    USP McCreary
                                    P.O. Box 3000
                                    Pine Knot, KY 42635

Page 8 of 8